UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JANET L. BARROW,

        Plaintiff,

v.                                  Case No.  5:04-cv-302-Oc-10GRJ

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

_____

## REPORT AND RECOMMENDATION[1]

    Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits. (Doc. 1.) The Commissioner has answered (Doc. 5), and both parties have filed briefs outlining their respective positions. (Docs. 10 & 12.) For the reasons discussed below, the Court finds that the Commissioner's decision is due to be **AFFIRMED**.

## I.  PROCEDURAL HISTORY

    Plaintiff filed an application for disability insurance benefits on November 15, 2000, alleging a disability onset date of October 9, 1989.[2] (R. 65.) Plaintiff's application was denied initially on March 2, 2001 (R. 40), and upon reconsideration. (R. 37.)

_____

[1] Specific written objections may be filed in accordance with 28 U.S.C. §636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

[2] Although Plaintiff alleged that she became disabled on October 9, 1989 due to reflex sympathetic dystrophy and chronic pain she also claimed in the same report that she did not stop working until February 1, 1996. (R. 161.) Consequently, Plaintiff later amended her alleged onset of disability to December 31, 1994, the same date that she was last insured for purposes of entitlement to disability insurance benefits under the Social Security Act. (R. 698.)

Thereafter, Plaintiff timely pursued her administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 9, 2002.  (R. 695.) Plaintiff was represented by legal counsel at the hearing. The ALJ issued a decision unfavorable to Plaintiff on December 2, 2002, finding that the Plaintiff was engaged in substantial gainful activity as the operator of a horse breeding and boarding business from December 1994 through 1999 (R. 12-17.)  Plaintiff filed a timely request for review of the hearing decision with the Social Security Administration's Office of Hearings and Appeals. (R. 8.) The Appeals Council denied Plaintiff's request for review on March 31, 2004 (R.4-6), making the hearing decision the final decision of the Commissioner. On July 1, 2004, Plaintiff filed the instant appeal to this Court. (Doc. 1.)

## II. <u>STANDARD OF REVIEW</u>

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[3] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[4]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the

---

[3] *See* 42 U.S.C. § 405(g).

[4] <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982) and <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Commissioner's decision.[5] The district court must view the evidence as a whole, taking

into account evidence favorable as well as unfavorable to the decision.[6] However, the

district court will reverse the Commissioner's decision on plenary review if the decision

applies incorrect law, or if the decision fails to provide the district court with sufficient

reasoning to determine that the Commissioner properly applied the law.[7]

The law defines disability as the inability to do any substantial gainful activity by

reason of any medically determinable physical or mental impairment that can be

expected to result in death, or has lasted or can be expected to last for a continuous

period of not less than twelve months.[8] The impairment must be severe, making Plaintiff

unable to do her previous work, or any other substantial gainful activity which exists in

the national economy.[9]

The ALJ must follow five steps in evaluating a claim of disability.[10] First, if a

claimant is working at a substantial gainful activity, she is not disabled.[11] Second, if a

claimant does not have any impairment or combination of impairments which

---

[5] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[6] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[7] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[8] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[9] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[10] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[11] 20 C.F.R. § 404.1520(b).

significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[12] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[13] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[14] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[15]

### III. SUMMARY OF THE RECORD EVIDENCE

Plaintiff was born on March 20, 1956. (R. 65.) She was forty-six (46) years old when the ALJ rendered his decision in this case. (R. 13.) Plaintiff has a college education (R. 167) and past relevant work as a horse breeder and boarder, a substitute teacher and as a farm manager. (R. 13.)

In a disability report, Plaintiff alleged an inability to work beginning on February 1, 1996 although she alleged that the alleged onset date was October 9, 1989 due to reflex sympathetic dystrophy and chronic pain. (R. 161.)

Plaintiff submitted to the ALJ as part of the record her federal income tax returns for the years 1994, 1995, 1996, 1997, 1998, and 1999. (R. 90, 85, 80, 78, 74 & 70.) Plaintiff listed her occupation as "horse breeder" on her 1994, 1995 and 1996 tax returns. On her 1997 tax returns Plaintiff listed her principal activity as "breeding/raising

---

[12] 20 C.F.R. § 404.1520(c).

[13] 20 C.F.R. § 404.1520(d).

[14] 20 C.F.R. § 404.1520(e).

[15] 20 C.F.R. § 404.1520(f).

thoroughbreds" (R. 78) and on her 1998 and 1999 tax returns Plaintiff listed her principal activity as "breeding/boarding thoroughbreds" and "thoroughbred horse breeding and boarding" respectively. (R. 74 & 70.)

Plaintiff's 1994 tax return discloses gross income of only $557 but expenses of $13,454, resulting in a net loss of $12,897. (R. 91.) Additionally, Plaintiff reported in her 1994 tax return that she "materially participated" in the business and that she did not have any employee or labor expenses. (*Id.*)

The next year - 1995 - Plaintiff reported income of $40,448 from horse breeding and a gross income of $45,398 on her tax return. (R. 86.) She reported expenses of $45,234 (but no employee or labor expenses) resulting in a net income of $164 for 1995. (*Id.*) Again, Plaintiff reported in her tax return that she "materially participated" in her business during 1995.

In 1997 Plaintiff's reported income, as disclosed in her tax return, increased to $66,125, although her claimed net loss decreased to $7,821 based on claimed labor expenses of $12,233 and a total of $77,946 reported for expenses. (R. 78.)

On Plaintiff's 1998 income tax return she did not report any income from breeding thoroughbreds but claimed income of $96,911 from boarding. (R. 74.) Plaintiff claimed total expenses of $91,994 (including $18,380 for labor expenses) for a total net income of $4,917. Again, Plaintiff affirmatively reported on her tax return that she "materially participated" in the business during that year. (*Id.*)

Lastly, on her 1999 tax return, Plaintiff reported other income of $86,661 and gross income of $98,450. (R. 70.) Of this amount she claimed $22,546 as labor expense and total expenses of $98,233, resulting in a net reported income of $167. (*Id.*)

Plaintiff reported that she "materially participated" in the operation of her business during this year, just as she had in four of the five previous years.

Plaintiff testified at the hearing that she began managing a horse farm and boarding horses in December 1994 during which time she handled about ten horses. (R. 703, 704, 727 & 731.)  Between 1994 and 1999 she was engaged in horse breeding and for most of that time in boarding horses. Some of the horses on the farm belonged to the Plaintiff. Although the horse breeding operation did not generate more than negligible income the expenses attributed to this operation greatly exceeded the reported income. In contrast, the horse boarding operation conducted on her farm, generated significant income compared to the horse breeding operation, as reflected on the tax returns of record.

Plaintiff testified at the hearing that she fed the horses twice a day sometimes with the help of her daughter and another employee. (R. 705.) According to Plaintiff, she spent about three hours a day feeding the horses and doing the paperwork. (R. 731.) Plaintiff did not groom the horses and would use a temporary employee to do the physical labor involved with taking care of the horses. (R. 728.) However, even though the Plaintiff was limited with regard to the actual hands-on in caring for the horses, she took care of the paperwork for the business, which included preparing payroll and taxes. (R. 706.)   Although, Plaintiff's husband was a farm and ranch manager there is nothing in the income tax returns or the record which suggests that he operated Plaintiff's farm, the financial operations of which are disclosed in schedule F,[16] attached to the tax

---

[16] Schedule F of the tax returns lists the profit or loss from farming of Plaintiff's business.

returns of record. As reflected on the tax returns, Plaintiff's horse breeding/boarding business involved substantial sums of money as well as a number of activities such as purchasing feed, obtaining and paying for supplies, paying taxes, insurance bills, paying for veterinarians, paying for farriers and taking care of miscellaneous repairs.

Based on this evidence the ALJ determined that Plaintiff was self-employed as a horse breeder and horse boarder from December 1994 through 1999. In the operation of this business the ALJ determined that Plaintiff performed all of the managerial functions. As a consequence, the ALJ concluded that Plaintiff was engaged in substantial gainful activity because her work activities such as hours, skills, energy output, efficiencies, duties and responsibilities were comparable to that of an unimpaired individual in the same of similar business. (R. 16.) Accordingly, because the ALJ found that Plaintiff was engaged in substantial gainful activity prior to and continuing for several years after December 31, 1994 - the date last insured - the ALJ concluded that Plaintiff was not entitled to disability insurance benefits.

## IV. **DISCUSSION**

The sole issue presented on appeal in this case is whether there is substantial evidence to support the ALJ's conclusion at step one of the sequential analysis that Plaintiff's self-employment in the horse breeding/boarding business constitutes substantial gainful activity.

In order to determine whether a self-employed claimant - as here - is performing substantial gainful activity, the Commissioner utilizes three tests.[17] The first test

---

[17] 20 C.F.R. § 1575(a).

provides that a claimant has engaged in substantial gainful activity "[i]f [the claimant] render[s] services that are significant to the operation of the business and receive[s] a substantial income from the business."[18] The second test provides that a claimant has engaged in substantial gainful activity "[i]f [the claimant's] work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in [the claimant's] community who are in the same or similar businesses as their means of livelihood."[19] The third and last test provides that a claimant has engaged in substantial gainful activity "[i]f [the claimant's] activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in §404.1575(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work [the claimant is] doing."[20]

Where, as here, the ALJ concludes that the claimant is engaged in substantial gainful activity at step one of the sequential analysis, the ALJ is not required to discuss the medical evidence or the opinions of the physicians.[21] Thus, even if a claimant would be considered disabled based on the medical evidence if the evaluation proceeded past step one, the claimant is, nonetheless, considered not disabled if she is engaged in substantial gainful activity.

---

[18] 20 C.F.R. § 1575(a)(1).

[19] 20 C.F.R. § 1575(a)(2).

[20] 20 C.F.R. § 1575(a)(3).

[21] *See,* <u>Katz v. Secretary of Health and Human Services</u>, 972 F.2d 290, 293 (9th Cir. 1992).

The ALJ in this case evaluated Plaintiff's self-employment under the second of the three tests in concluding that the Plaintiff was engaged in substantial gainful activity. The focus under the second test is on the hours, skill, efficiencies and responsibilities of the self-employed claimant. There was ample evidence of record to support the ALJ's conclusion that in terms of these factors claimant's involvement was comparable to those of an unimpaired individual running a small horse breeding and boarding operation.

Plaintiff, herself, represented on five of the six tax returns from 1994 to 1999 that she "materially participated" in the operation of the business. While Plaintiff's participation in tasks such as grooming may have been limited - and she required some assistance in feeding the horses - Plaintiff testified that she performed the management operations of the business.  The fairly substantial nature of the management of the business is evident from the tax returns of record. These tax returns disclose that the gross income form the business ranged from approximately $45,000 in 1995 to approximately $96,000 in 1998 and $98,000 in 1999. Expenses for these years included a number of activities that were part of the business including purchasing feed, obtaining and paying for supplies, paying taxes, paying for repairs, and paying for farriers[22]. In addition, the expenses for the business disclose that arrangements had to be made for veterinarians, stud services, van transportation, and registration. The ALJ relied upon all of this information of record in concluding that Plaintiff's responsibilities

---

[22] Farriers are commonly referred to as "Blacksmiths" and are responsible for repairing and replacing the metal shoes that are placed on the hooves of horses.

and duties in running the business were substantial and comparable to that of an unimpaired operator of a horse breeding/boarding operation.

Ths main focus of Plaintiff's attack on the ALJ's decision relates to the fact that the tax returns disclose little, if any, profit from the business.  However, the ALJ properly analyzed the nature and the quality of the work performed by Plaintiff in managing the horse breeding/boarding business rather than limiting the analysis to whether or not a profit had been realized.[23] In the self-employment context income or earnings alone are not determinative of substantial gainful activity.[24]

Indeed, the ALJ addressed one of the reasons the business rarely showed a profit. The record discloses that Plaintiff deducted a substantial amount of her expenses to insure that the business did not show much of a profit. The lion's share of profits disclosed on Plaintiff's income tax returns from 1994-1999 came from horse boarding and not from horse breeding. However despite this fact Plaintiff deducted her expenses without any allocation between horse breeding and horse boarding.[25] As the ALJ correctly found the Plaintiff consistently received a substantial gross income from 1995-1999 and each year deducted significant expenses, which reduced her profit from the business to a relatively small sum. While this may have caused a favorable tax result for

---

[23] *See,* Keller v. Sullivan, 928 F.2d 227, 232 (7th Cir. 1991)( Because [claimant] was self-employed, his apparent failure to make any actual profits does not create a presumption that he was not engaged in [SGA]).

[24] 20 C.F.R. § 404.1572(b); *see also,* Byington v. Chater, 76 F.3d 246, 249-50 (9th Cir. 1996); Callaghan v. Shalala, 992 F.2d 692, 695-96 (7th Cir. 1993)(unprofitable business owner found engaged in substantial gainful activity).

[25] Notably, in 1994 - during a time the Plaintiff testified she was not boarding horses - her income from breeding was negligible yet she had expenses of approximately $13,000.

the Plaintiff it does establish that the Plaintiff was not engaged in substantial gainful activity.

The burden is on the Plaintiff to prove that she is not engaged in substantial gainful activity.[26] The Plaintiff failed to carry this burden by simply relying on the fact that her business showed a loss or a small profit every year from 1994-1999. Instead, the record contains substantial evidence that fully supports the ALJ's determination that Plaintiff was engaged in substantial gainful activity at step one of the sequential analysis and, therefore, that Plaintiff is not entitled to disability insurance benefits.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

**IN CHAMBERS** in Ocala, Florida, this 26th  day of September, 2005.

GARY R. JONES
United States Magistrate Judge

Copies to:
The Honorable Wm. Terrell Hodges,
Senior United States District Judge

Counsel of Record

---

[26] *See,* Morris v. Apfel, 1999 WL 987357 (10th Cir. 1999)(unpublished)

11